and then we will now call the case. Case number 13-3788, consolidated with 14-3279, Celeste Walker v. Chicago Housing Authority. Will all the attorneys that are going to present for each side step up and identify yourself for the record. Good morning, Your Honor. Karen DeGran for the Defendants Appellants, Chicago Housing Authority, and it's time for Change RMC. May it please the Court and Counsel, Defendants ask the Court to reverse the judgment of the defendant on behalf of the defendant.    The trial court's memorandum opinion after the bench trial is replete with unsupported factual findings. The plaintiff's theory, as stated in the response brief in this Court, acknowledges that there is no duty on the part of the defendants to provide elevator service, but rather they proceed on the theory that there is a duty to provide safe premises to perform hazardous work. The glaring deficiency in the record, Your Honors, and I'd submit the most glaring deficiency, is in the trial court's assessment of the plaintiff's proof on the element of proximate cause, and of course the plaintiff had the burden on that element. The causation findings relied on an expert's account of what might have happened in the elevator shaft. The one eyewitness, Stephanie Carter, testified at trial, to the extent that there is an eyewitness, she testified that Mr. Walker was in front of the elevator, no obstruction to her view, that the doors opened. Did she also say he was pushing buttons? She also said he was pushing buttons with one hand. I'm sorry, Your Honor. That he was talking to her, he had turned to talk to her, was pushing buttons, turned, the doors opened, he steps into the elevator, and immediately goes down, immediately falls. Can I ask you a question about one of your first comments? You said that the plaintiffs agree there's no duty to have the elevators working. That's what the plaintiffs said in their brief at page 44, Your Honor. Okay. Is there any duty on the authority, and it's time for a change, to make sure that if they aren't working that they're kind of shut off or something? Your Honor, there's never been an allegation in this case. No, I understand. And I don't believe that there's any case law that's been identified that recognizes that. Is there any duty to keep them in a safe condition? Based on plaintiff's theory, is there a duty to keep them in a safe condition? I think that that has to be put into the context of to whom the duty is owed. And in this case, the allegation of to whom the duty is owed is to what? Intended users. Is to a person who they claim is an intended user, which are people who are working on the elevator. All right. Let me just ask you one other question. Certainly. Is there any duty, well, didn't they allege something in their complaint about that there was a duty to keep them from being unreasonably dangerous? There are statements like that in the complaint. Well, aren't they allegations then? I mean, what do you mean they're statements? Well, there are allegations in the complaint that are some, there are some general allegations. Isn't that one of them, though? There's a duty to keep the elevators from being unreasonably dangerous. I think that's correct, Your Honor, and I couldn't point to that specific language.  I believe that that's part of the complaint. All right. And the duty that the plaintiffs proceeded on here was the duty allegedly owed to an individual who they claim had the, was permitted to be working on the elevators. But what we have here, Your Honor, in the problem that we see, which is a problem that requires the court to reverse and enter judgment for the defendants, is that we've got an approximate cause element. We've got speculation heaped on speculation. Because once the doors close, I don't know what happened. Mr. Donnelly, the plaintiff's elevator expert, doesn't know what happened. Ms. Carter doesn't know what happened. But her testimony is clear at trial that he immediately goes down. So what we have is Carter's testimony. He fell immediately. She hears a noise. She thinks that she hears something like the elevator falling, then a boom. And then after that, the elevator door opens, and then she sees the cat. And she couldn't say how long that took. And I think that's an important point to make for the court, because the plaintiff's claim in attempting to bolster the foundation for Mr. Donnelly's testimony, that Carter testified the elevator door shut and then instantly opened back up. And that's not what she testified at trial. No one knows what happened to the elevator shaft. So here we have Mr. Donnelly's testimony. He's an elevator mechanic. He's an engineer. He's an electrical engineer. He's not a biomechanical engineer. He gives extensive testimony at trial about proper maintenance and oil leakage and so on and so forth. Did he agree there was oil on the top of the cab? That was his testimony. So your expert agreed there was oil? That, I believe, was the expert's testimony based on the photographs. But the point I'd like to make about Mr. Donnelly, Your Honor, is he speculates, contrary to Carter's testimony, that Mr. Walker, instead of going instantaneously into the elevator shaft, grabs a rope, steps onto a crossbar, and then is attempting to step on to stabilize himself on the top of the cab. And the physical evidence doesn't bear that out. I mean, Mr. Walker's shoe is located on top of the cab, but there's no footprint, there's no handprint. You know this woman that was the eyewitness? Yes. I know she's not in the same position at all as Mr. Walker, but it's just a question I'm asking. Is there any duty to people that are coming into the building that forget about the status of Mr. Walker? Was there any duty at that time to anybody, like tenants or any visitors to the building that the housing authority had? It's not about Mr. Walker. I'd say no, Your Honor, based on this Court's decision in the Curry case. Okay. And why is that? And the Court's reasoning in the Curry case was that the fact of having an inmate or sometimes are out of service is just a fact of life. That's what the Court's words were. Yes. And in that case, that was a more urgent situation than what the Court just identified because the plaintiff in that case was a resident of the building and he had a medical emergency, and the allegation was that the paramedics couldn't get up to bring the inoperable elevators, and it was determined there was no duty in that case. A landlord does not have a duty to have the elevator running continuously, and the Court found that it would be, as a matter of public policy, a bad that it would be against public policy considerations to impose that kind of duty on a landlord. So in this, as far as back to Mr. Donnelly's testimony, though, it seems to me very clear on this record that the defendant's motion to bar his testimony should have been granted because it was pure speculation as to what happened, and on top of that being speculative. But didn't your own expert agree that his theory was actually as equally plausible as Mr. Donnelly's? He did not say that. What did he say? He said there was at one point, and that's a point that the Court said that and the Court was in error in saying that. The plaintiff has said that. The plaintiff is in error in saying that. He, when presented with the possibility of Donnelly's scenario, Mr. Gregory said that it was possible, and then when pushed on that, he said he didn't agree with it. So there was no, this concession that's being emphasized did not occur. And then back to the plaintiff's expert's testimony, the basis for the speculation about how this happened, grabbing the rope and standing on the crossbar and so forth, and that's based on further speculation that Mr. Walker was to the level of a professional, what a professional would have done, what an elevator helper, a trained elevator helper would have done. So we have speculation as to what occurred, which is founded on speculation as to his training. And what's even worse, and I think fundamentally unfair and not explained at all by the plaintiff in the response brief, is that in a answers to interrogatory, Ms. Walker admitted without any equivocation that her father had had no formal, no informal training. Well, did someone else though, didn't the expert, now I know you moved to bar the testimony of the expert that was based on another individual named Taylor, was that? It was based on Taylor's account of what Wilson had said. All right, and generally speaking, isn't that the kind of evidence that an expert could rely on? Well, you know, applying the Wilson versus Clark test, would an elevator mechanic rely on double hearsay as to what had occurred? I don't know that that's a proper foundation, but even if the court assumes that it is, the statements by Mr. Donnelly as to the facts or statements that he's relying on to reach his opinion don't count as substantive evidence. Well, they don't count as substantive evidence of what happened. Now, one of the findings the court made, I think, was that this individual, Mr. Walker, was known to them that he, on multiple occasions, was responding to a tenant's request to get the elevators working. Is that true? That's what Givens testified. Yes, she did testify to that. She testified also that he had been told to stay under no circumstances are you to touch the elevators. And this is another. . . Didn't the court, though, conclude that. . . Well, first of all, can the court, the trial judge as the fact finder, accept portions of testimony and reject portions of testimony? I don't think in this case she had a basis for rejecting that testimony. It was uncontroverted. That's not my question. My question is does the law permit a fact finder to accept portions of testimony and reject portions of testimony? Not arbitrarily, Your Honor. Okay, not arbitrarily. And based on the Bucktown case and other cases, when there is testimony that is uncontroverted, and the only other testimony that came in about that was a discussion of Talbert's testimony by Detective Daly. We have Givens' testimony. Givens' testimony indicates, does it not, that they were aware that he was doing this sort of assistance with the elevator on numerous occasions. One of the issues, one of the problems, she did give some testimony to that extent, but when you look at the actual testimony and you compare it to the actually was, that there was, and there are numerous findings of fact, and this is a problem with the trial court's memorandum. Are we bound by her specific findings of fact, or are we reviewing the evidence in its entirety to determine whether it's supported by the manifest weight? I agree that the court can look at the record and determine whether the record as a whole supports the judgment. But what this takes me back to, Your Honor, is the issue of proximate cause. All right. And the plainest burden on proximate cause, and the plainest failure to establish a burden on, to establish this burden on proximate cause. Because, again, regardless of whether you have Ms. Givens testifying to having some information about Walker operating the elevator, there's no testimony that he was permitted to do it. In fact, she told him not to. In fact, the other hearsay accounts of the role. I'm sorry. I'm wondering if she told him not to, wasn't there some kind of question about the fact that she said that there were numerous filings in his tenant file that he was told on numerous occasions not to be doing anything with the elevators? She testified that she would expect to see additional entries. There was only one altogether. And there was the one that was from the day he died. From the day that he died, and Nichelle Dixon, with whom he lived, corroborated that he went and talked with Givens and with Talbert, the property manager, on that day. So there's nothing to refute that. The other part of this piece, Your Honor, and again, I think in fairness to the defendants. Didn't he come in? I'm sorry, but you go ahead. You go, Your Honor. Well, I'd rather answer your question. The day that he did, was it the day he died, when he came in and was asking for compensation? He did that. That's what the testimony was. That was that same day? That was the same day. Okay. And that was corroborated by Dixon. And the other part of this was, again, and the court seemed to, you would almost have thought that Wilson was the star witness in this trial. But Wilson had been barred by the motion of the plaintiffs. So we have this inherent unfairness of this hearsay testimony being such a part. And refresh my memory. Why was he barred from testifying? He was barred because, and again, the court suggests that there was a discovery violation. There's none that I could see in the record. Nobody could find him. And the plaintiff, I believe, tried to find him to serve him as a defendant and couldn't, and the CHA had no. He was never served. He was never served. So we have this inherent unfairness of the plaintiff going forward and barring this witness. And yet his testimony is such, his testimony forms the foundation for what we truly believe is speculation about this training and he knows what he's doing and he knows he's going to hold on to the rope and all these other things. Speculation about his training and then speculation about what happened. Well, is it really speculation when there's evidence in the record that Ms. Gibbons acknowledged that he was, not that they were permitting him to do this, but they were certainly aware that on numerous occasions he had been functioning as a service operator of sorts. But that's not what, but that's, I think that's overstating the testimony, if you'll allow me to say that, Your Honor. Yes. And it wasn't, and this again is sort of the fundamental problem with the conclusions that everybody leaped to with the account of Wilson's testimony, which was Wilson had said to Terry Taylor, another elevator helper, well, and this also happened years after the fact, yeah, I showed him how to do some things on the elevator and we worked together sometimes. That doesn't say to me a thing about training. And I don't know what some things are. All right. So to the extent that that's the foundation for the speculation about what happened is our position that it clearly does not meet the level of what the plaintiff had to prove in this case, Your Honors. Was it speculation, though, to say that there was an accumulation of oil on the top of the cab? Is that speculative? I think that that was testimony that Donnelly could give, but it's speculative to say that that's what caused the flaw. We don't know what caused the flaw. No, but isn't there enough in the record to suggest at least that when the doors opened the cab wasn't there and so that he stepped into a hole or certainly maybe the cab was a few feet underneath? Is that speculative? It could have been at the bottom of the shaft, for all we know. And that's certainly, I think, a more factually supported conclusion than this notion that it's just a couple feet down. Well, let me ask you about the one other elevator case with the CHA and the employee who was actually hired in that case to do work on that elevator. How would you distinguish that case? Well, that's the Martin case. Yes. That case was really a very different situation. For one thing, there's no dispute that Martin is an employee. There's no dispute that he's on top of the elevator cab and he's allowed to be on top of the elevator cab. There's no dispute that he wants that when the cab or when the elevator starts to malfunction, he's there. He's not putting himself, like Mr. Walker did, in a position of peril unnecessarily. He's on top of this thing and it starts to jerk and he's trying to right the ship, basically. And then, you know, so the question was, was there a duty? And it turned on duty. And in that case, it was determined there was a duty. And what was the duty there? The duty that was identified was to, I'm not going, I don't want to overstate, Your Honor, there was a duty to provide a workplace for this person who was permitted to be there. But that's not what we have here. And another interesting aspect of Martin, which we pointed out in our brief, he was assessed 17% comparative fault. All right. Well, let's before you sit down. Okay. Is there any case that says that a court in a bench trial has to annunciate that they specifically rejected any comparative negligence on his part? I don't believe there's a case that says that. But I think in reviewing the court's opinion, it seems to me that she made clear she made her assessment of damages, that the trial court made its assessment of damages. Assessed damages is being $1.5 million. And there's no discussion of, there's no reduction for, there's no acknowledgment of comparative fault on the part of the decedent. And that to me, I'm not faulting the trial court for not articulating a. . . Well, can't we presume then that she rejected it? But that's not what, I don't think that that's a fair presumption based on what's set forth in this opinion, in this memorandum opinion. Because of the fact, the way she describes the damages. And the other part of this that I think may explain that error by the court, and I believe it's against the manifest weight of the evidence to reach that conclusion of zero percentage, is that there was an argument that the plaintiff made that there could not be an assessment of comparative fault if there was a finding of willful and wanton conduct. And that is not a correct statement of the law, as the court is well aware. So it's possible that that led her to believe that she couldn't make that assessment. I don't know. But it seems to me that there wasn't any such assessment based on the language that's contained in this memorandum opinion, Your Honors. And we believe that that is reversible error. We've also taken the position that based on Mr. Walker's status as a trespasser, that further error is demonstrated by the record that it's further against the manifest weight of the evidence, and that the record does not support a conclusion that there was willful and wanton misconduct. I see my time is up. May I ask some questions? Certainly. Your theory is basically that there was no evidence to support this verdict. Is that correct? No evidence to support the approximate cause. Yes, Your Honor. Okay. There is evidence that the cab, the top of the cab, was in an unsafe condition by the expert. That's what he testified to. Donnelly testified that there was oil on top of the cab and that made it dangerous. And that's unsafe? That's what he said. Is that not evidence of negligence? That may be. That could be evidence of negligence, Your Honor. But it does not answer the question, what caused Mr. Walker to fall? Well, if there is grease on top of the cab, there is a concept in the law of a reasonable inference, especially in a death case, a reasonable inference that if it's slippery, somebody could have slipped and fell. How do you answer that? The way I answer that, Your Honor, is to direct the court to the cases that we cited in our brief. I believe that the Verdon case is a very recent case that addresses the issue of a dangerous record where there is testimony that there is a danger present in an area where someone fell, and for whatever reason, nobody can say what occurred. It certainly also is true of the Levitt case that we cited in our reply brief where there was – None of those cases are like this case. Every case, you know, lives or dies based on its facts. And here you have an expert. Did you make a motion to bar this expert's testimony? Yes, we did, Your Honor. And that was denied? That was denied. Okay. And this expert was a qualified man who reconstructed the accident, did he not? He had no basis to reconstruct the accident. Well, I mean, that was part of your motion to bar him, that he did not have a proper basis. That's correct, Your Honor. He didn't have a proper foundation. It was pure speculation. That's what our position was, and that's what our position is. And I don't believe that there's any case – there's no case that I'm aware of that says, if you can identify a slippery substance on top of an elevator cab or in an area where – on premises, but you don't know what caused a person to fall, then therefore, you can surmise it as a matter of circumstantial evidence. In the Richardson case, it didn't involve oil, but it involved water, and that's a case that's in – you know, when we talk about the concept of – I don't know that – I don't know that I – I wouldn't necessarily say that I know that to be true, Your Honor. Well, on top of an elevator cab that has a steel surface, you don't think – or some kind of metal surface, you don't think that oil would be slipperier than water, and that's kind of like a common-sense sort of opinion? I don't – I don't know, but I will say this. My – I don't know the answer to that question, but I will say I don't know that Mr. Walker stepped in it, and neither did Mr. Donnelly, and Mr. Donnelly conceded that at the trial. All right. But there was testimony about the oily surface. There was testimony that his – one of his shoes, his flip-flops or sandals or whatever they were, one of them was left on the cab, and then there was a Z-key – is that what it's called? Yes, that's correct. That was also on top of the cab, right? Yes. So there's certainly evidence that perhaps you could infer, I think, that, you know, he fell because one of his shoes was still there and one was – the other one wasn't on him, was it? It was, I think, found at the bottom of the elevator shaft. So isn't there a reasonable inference perhaps that he fell because both of his shoes were no longer on his feet? Is that a reasonable inference? I think – I think from all the testimony, the court could infer that there was a fall, but whether there's stepping onto the elevator cab and slipping in oil, I think that's pure speculation. And even if the court said, well, maybe there's a reasonable inference, when you're basing your presentation of proximate cause on circumstantial evidence, it can't just be, here's three reasonable inferences. Something has to be the probable inference. And that's just not the case here.  It's your contention that there's an inference based on an inference instead of on evidence. That's correct. It's speculation on speculation is my – is the way I'd say it. But I think that's really accurate, an accurate rendition of this record. The plaintiff seeks to impose liability based on speculation, and it's contrary to established law. The first Springfield case, all the cases we talk about in our brief on proximate cause, and I think what's happening or what potentially would happen here is the court would create a precedent holding landlords responsible for dangerous conduct of their tenants. And we would ask that the court follow this court's decision in Curry, follow all the well-established law governing proximate cause, and find that no liability should be imposed on these defendants in this case. Thanks very much, Your Honors. Mr. Lee. I really don't know where to start. There's several points that I'd like to address. Show us where there is evidence to support this verdict. That's how simple it is. Happy to do that. One thing that's being omitted in the analysis here is our experts' testimony that when somebody would seek to access the top of the elevator car to operate this car top inspection station, they would step onto the area by the hoist ropes and stabilize themselves. And then they would step down and operate this inspection station. The photographs in this case and the testimony from Mr. Don and Don Lee clearly explain that there was oil in the area where somebody would step to stabilize themselves. Well, do the photos show the oil?  I think if you start with Plaintiff's Photograph Exhibit Number 24 and work your way through, you'll see the oil in the area and you'll see how it explains what happened here once Mr. Walker stepped into the elevator. What's a de facto employee? A de facto employee, according to the judge. I'm not asking what the judge thought. A de facto employee was essentially somebody who the CHA and the RMC were aware was accessing the top of the elevator. What case law or what authority is there for this idea about a de facto employee? I wasn't able to track down any case law. Is there any authority for this finding that he was a de facto employee? Well, legal authority or factual authority. Legal authority. I'm not aware of any legal authority for that particular finding. I'm aware of the basis for the court's conclusion that he was a de facto employee. Yes, but is there some kind of authority that you would suggest to us in terms of approving of or permitting this notion about a de facto employee? I'd suggest any case law that's out there that would support the notion that if somebody is performing a task which somebody else was required to perform and you know that he's performing that task and you permit the person to continue and to continuously perform that task because, as the trial judge indicated in this case, it was convenient for the owner of the property and the management company to do so. I'd suggest that would be the type of authority I would be looking for. This is clearly a situation where it's based on the record of Mr. Walker actually accessing the top of the elevator and performing this task, moving a stuck elevator for the tenants and the residents, something that the employee for RMC should have been doing but was not doing in this case. What about the proximate cause? Counsel says there's no evidence in this record to support any testimony that supports proximate cause. There is. I think you start out with Mr. Donnelly who pieces things together, but you look at what he relied upon. Well, did he rely upon something that normally courts would permit? I mean, it is one thing to allow an expert to testify based on information provided by another, but here we have information being provided by a witness about another witness and in this case the plaintiff sought to bar Wilson, correct? Sought to bar the testimony regarding a conversation with Wilson on the basis that it was hearsay and actually it was not hearsay, it was an admission that was made by an employee of RMC. But who did he make that admission to? He made the admission to Mr. Taylor, Terry Taylor. Did Terry Taylor testify? Terry Taylor did testify. And what did Mr. Taylor say about Mr. Wilson and what he said? He testified that Mr. Wilson indicated that Mr. Walker worked with him on the elevators and that he showed him some things to do on the elevator. But was that the extent of it, showed him some things to do? That was the extent of it, yes. Do you think there is anything you can infer from that other than, I mean, what could you reasonably infer? Well, I think what you can reasonably infer from that is I think you would look to the testimony of the experts in this case, particularly Mr. Donnelly, and he indicated that that is one of the very first things, if not the first thing, that an elevator helper learns to do. To get onto a cab so they can move the cab. Absolutely, absolutely. And he said, I think his testimony was that it's the first item of maintenance that an elevator helper learns. In fact, he said that he learned it when he was a student. He wasn't even functioning as an apprentice at that point. He learned it as a student. So absolutely. Mr. Lee, your opposing counsel has suggested that there's really no duty of any kind at all in this case. Well, there clearly is a duty owed to somebody intended and permitted to access the very top of an elevator. And I think the Martin case supports that notion, because in Martin a duty was found, and a duty that was owed in that case. But that fellow was an actual employee, was he not? He was an actual employee, right. He was a helper, let me put it this way. The evidence here, other than Terry Taylor saying that Mr. Wilson said that he showed him a few things, where is there an employment relationship? Any of the hallmarks of a traditional employment relationship? What you do is you have actually his performing a task that an employee was required to perform, and being permitted to do it and being allowed to do it. But permitted isn't the same as intended. No, it isn't. It isn't the same, but I think that this goes beyond permitted when you allow somebody to continuously do this. And you know he's doing it, you allow him to continuously do it, and you do it because it's a matter of convenience for you. You also know that... What case would you suggest we could analogize this to where you have someone that it's been testified to, that they were aware he was doing this because they had complaints that he was doing this, and they continued to leave the elevators running up and down or whatever, even not running, but that someone would perform a task. I cannot point to a case for you right now. Well, don't you have something you'd like to suggest? Are there any cases that you could say would support the idea of what occurred here with this person who was continually bringing people up and down when it was necessary to solidify your intended user suggestion? No, my intended user, I absolutely would base it on a combination of his clearly serving as a helper to Mr. Wilson, the evidence that he served as a helper to Mr. Wilson, and this evidence that as a trial court said that the RMC and CHA permitted him to continue to use it. I would simply rely on that factual scenario. I do not have a case. When did RMC take over, the beginning of the year? No, RMC had been there for quite some time. Oh, I'm sorry, I'm confusing the RMC elevator people. When did Wilson take over? He took over at the beginning of the year. That's what I meant. He took over and then the accident occurred in the summer, didn't it? In July, July 27th. What about this contributory negligence? The court doesn't mention it, acts as if it doesn't exist, doesn't even reject it. What is your response to that? Well, the response to that is there was no evidence of contributory negligence, so there was no need. Well, what about the evidence that even, I thought it was your expert that said that a helper or someone getting on the top of a cab, you know, wouldn't, didn't he say something about those flip flops that Mr. Walker was wearing? He did. Did he even concede that they were not the kind of shoes, or is that the other expert? No, that's Mr. Donnelly who did say that. And Claudel Williams from First Priority also was asked about the shoes. So do you think that that's- But the big difference- Go ahead. Go ahead. But the big difference is Mr. Donnelly was specifically asked, would even the world's greatest shoes, work boots, have prevented slipping here? And he said no. But isn't that evidence, though, of some contributory fault? You're being a helper and you're using shoes that are, I mean- No, I think what that is similar to is the presentation that was made in the 13 case where this expert came in with an affidavit pointing to a number of defects but never linking the defects in that staircase to what actually happened. Here, nobody linked the shoes that he was wearing, the footwear, to what happened here. Well, do they need to link those kinds of shoes to why? Causation. You have to show how it's implicated in this case, how it caused the injuries in this case. Mr. Walker could have been wearing shorts and he could have been criticized for wearing shorts, but you still need to link and connect the wearing of the shorts to the actual injury in the case. I think that's the defendant's burden in this case. Well, I understand. But I think that you could certainly infer that this isn't the typical type of shoe that a helper or worker or elevator person is going to be wearing to get into the cab. You can infer that. You absolutely can infer that. But the court didn't address any of that. Now, what about the testimony regarding him pushing the buttons and then- Is there any contributory fault when you don't look where you're going? No. He was looking right into the elevator. Stephanie Carter's testimony was he was looking right into the elevator. He was not looking away from the elevator. Their expert based part of his opinion on Stephanie Carter saying that Mr. Walker was personally looking at him. Can't you infer that if he was looking at where he was going, he would have stopped and not gone into a shaft that didn't have any surface for him to step on? Well, precisely. But what we're saying is that there was a shaft, that there was a surface for him to step on there. We're saying that the car top was there. That's what he was stepping on top of. Well, is there any evidence of that? Sure. Well- What evidence is there of that? Well, first of all, he called Ms. Carter up to the third floor. I mean, I would think his expletive would indicate that there wasn't a cab there. There was testimony about him using an expletive and then, you know, his hand waving down or something? Well, no, actually his hand was reaching out. Reaching out. Whatever. That's very significant because if the man is falling down, his hand would not be reaching out. His hand would be falling down. And also, would he be able to yell out his expletive if he was falling down the elevator? Or would he be, if he was slipping on the surface as Mr. Donnelly indicated from the physical evidence in this case and from where a person accessing the car top would normally step, if he was slipping, wouldn't that be more consistent with slipping than falling down an empty elevator shaft? Plus, there's no evidence whatsoever that the elevator was on the first floor at the time that Mr. Walker was on the third floor. The only evidence in this case of the elevator being on the first floor is testimony from Michelle Dixon that when she got down there, and she got down there after Mrs. Carter, this woman with COPD, walked from the third floor up to the seventh floor, told her what happened, and then Miss Dixon proceeded to walk down every floor yelling out Clarence Walker's name until she got down to the first floor. If he's a trespasser, it's your position you still prevail? Yes, it is our position that we would still prevail. Tell us about that. Well, he would prevail on the basis of being a known trespasser, the exception to the no reasonable care rule. There would be reasonable care in this situation. He's a known trespasser. In addition to that, there's a duty on the part of the CHNRMC in the case of a trespasser not to willfully and wantonly harm somebody. Do you only prevail on your known trespasser if you establish the willful and wanton misconduct? No. Why not? Because that's not a requirement of the known trespasser rule. You have to demonstrate that his presence was known and clearly Mr. Walker's presence on top of the... So what was the duty to the known trespasser that the CHA had? The duty was to provide a safe place for this person to be. If he's a trespasser, does he have any right to be on the top of a cab or does he only have the right to be going into a car? Well, he had the right to be on top of the cab. Would you say that everybody in the building would have the right to step into an open elevator shaft? No. So as a known trespasser, let's just go there for a moment. Why is there a duty? There's a duty because it's known that he will be up there. It's repeatedly known that he will be up there. No. If we're taking him as a known trespasser, in other words, they knew he was going on the top of the cab. All right. So that's the position. He's a known trespasser that goes on top of the cab. And what's the duty to the known trespasser that goes on top? The duty owed to him is to ensure that he's not exposed to a dangerous condition when you know he's up there and you're aware of the dangerous condition. Well, how do we know? Now, let's move to that. How do we know that the CHA and RMC had any idea that oil had accumulated? Where's the knowledge for that one? The knowledge for that is the accumulation. It took months for the oil to accumulate up in the machine room. It took weeks for it to come down the hoist way, and it took months for it to accumulate on the car top. Where's the evidence, though, that it took months? Is that from Donnelly? Yes, it is. What about the other fellow? Did he agree with that? Actually, I do not believe Mr. Gregory testified regarding the oil and how long it had been there. But Donnelly testified it would take months to accumulate? Yes, yes, he did. He absolutely did. Well, he testified it took months to accumulate, but how does that knowledge transfer to CHA and RMC when their elevator person is barred from testifying anyway? Well, it demonstrates that nobody is properly maintaining the elevator. Nobody is going up and checking to see if the oil is flowing over the drip pan. Well, doesn't the evidence kind of suggest almost the opposite because apparently Mr. Walker was going on top of the car, and wouldn't that suggest there really was no accumulation of oil since he'd been doing this without any incident? Isn't that certainly a reasonable inference? No, it isn't because there's no evidence as to when he was on the top of the car prior to this particular incident. Well, I thought you said there's evidence that he was constantly doing this. That's right, but there's no specific evidence of when he was up there prior to that and what the condition of the car top was at that time. I think that's a significant difference. I think you need to present that type of evidence to carry your burden. And what did Mr. Donnelly say as far as the oil accumulating? How did he come up with his conclusion that it took months to accumulate? Well, because first of all, there was, I think, a half-gallon drip pan under the area where the oil would be dripping, and it flowed over the drip pan and it migrated across the floor. Were there photographs of the drip pan that was overflowing with oil? No, I don't believe that there were. But were there photographs showing oil in the drip pan? There were photographs, you know, actually. There were photographs showing the oil that had spread all over the floor in the machine room. I don't believe, I don't actually have those photographs here with me. Do you think it's a reasonable inference from the evidence, Mr. Lee, that he fell slipping on oil? I do. Actually, I think it's the probable inference. It's a reasonable and the probable inference here. I think all of the other suggested possibilities are improbable and not reasonable. Did the witnesses that you called for the previous elevator servicing company, do you believe that they supported the decision by the trial court in this case? Did they help? Did they in any way add to the evidence? They provided background information in terms of what a helper would be doing and where a helper would be expected to be. I think, you know, in that sense they supported the trial court's decision. They provided factual background. And also they indicated what they did as an elevator maintenance company to properly maintain this elevator while they were there. So I think that helped the court also. The court could contrast their performance to the performance by Mr. Wilson and his self-styled company, which essentially was himself. How would you suggest this testimony? Was anything more than just ordinary negligence? The accumulation of the knowledge that this elevator was breaking down consistently. I mean, it's all over the place. But this isn't really your theory opposite of it breaking down. It's more he got onto the top of the cab, isn't it? Well, it's a combination of things. I mean, Ruby Gibbons' testimony on this is really critical to understand the knowledge that RMC had about the condition here and the reason why this is something more than just simple negligence. It goes to that type of negligence that's characterized as willful and wanton. How would you characterize, Mr. Lee, the duty if the CHA and RMC is aware that he's summoning the cabs for tenants, what is the duty on their part once they know he's doing this on a routine basis? I'd say the duty is to say stop and you're not supposed to be doing that. We hired somebody to do that. Hubert Wilson is the person who should be doing that. I think that's what they should have done. Now, the only evidence that they did something like this was evidence which the trial court found to be not credible evidence and for very good reasons. Well, and then I just want to ask what should we do with the fact that if the record shows there's evidence that he contributed to these injuries, what do we do with the court's apparent complete omission of any discussion along those lines? If you find such evidence, and I would suggest that there is no such evidence and that's why there was no mention of it in the court's opinion. The court clearly was aware that this was an affirmative defense that was raised. But here's the problem. If you were the defense lawyer here and you argued for contributory negligence, this is an eight- or nine-page decision by the trial court. Well, the lawyer makes an argument. Aren't they entitled to a decision by the court as to that argument? As counsel and as a litigant, I would like to see an answer to that. I would. But the question is, based on the evidence that was presented in this case, was there evidence of contributory negligence? And if there was not, was the trial judge required to make a finding with respect to that? And I'm not aware of any case that indicates that. So as counsel, I certainly would like to hear it. Well, the fact that he gets on top of a cab with sandals on might be considered evidence of contributory negligence. Again, you've got to link what he's wearing to actually what happened, and nobody did that. He obviously fell out of his shoes. There's evidence of that. Their theory was that the elevator was down on the first floor. Their theory was not that he had slipped. Their theory was that he fell down on the elevator that was at the first floor and that he bounced off the car top inspection station and then somehow flipped over the back of the elevator and plunged to his death. So it isn't even their theory in this case that he slipped as a result of that footwear. And again, Your Honor asked the question about Mr. Gregory, whether he commented about the other. I don't believe he did. I mean, other than he took photographs. But I don't believe that he did comment about the oil. He did comment or he did not? He did not. I'm sorry. Do you agree that he didn't agree that Mr. Donnelly's version of the facts was just as plausible as his? Actually, what he said was that he had no basis for it. There was no basis for him to say it would be more likely to have happened that way. Okay. Well, then that's – isn't that the appropriate standard? Then he didn't agree that Mr. Donnelly's version was more likely than not. But he didn't say that his was more likely, which I thought was the thrust of your question. All right. Anything further? Nothing further. I simply ask that the Court confirm the trial judge. All right. Thank you. Mr. Grant, a few more comments? Thank you, Your Honors. Duties to say stop is what counsel said. That's exactly what happened here. Given said stop. The other part of this is, and we have had a lot of discussion about Given's testimony being discounted by the trial judge. Again, we have Wilson also said that he had told Walker, stay away from the elevators. Don't tamper with the elevators. So there's that evidence. But what seems to me to be the most striking thing about the plaintiff's presentation here is, it's as though the defendant has a burden to prove the absence of proximate cause, not that the plaintiff has the burden to prove proximate cause. And I think that's where the real fundamental problem is with this case. We've got Donnelly testifying, and he can testify to, you know, his version of what it is that somebody is supposed to do to keep the elevator running properly. He can testify to a standard of care, so to speak, type of opinions. But he's not qualified. He, no expert is permitted to provide the factual basis for their opinion. No expert is permitted to say, I know how these things run,  therefore this is what happened. He can't give that testimony. He can't provide the own factual basis for his opinion as far as the facts of this occurrence. Now, to the extent that he did that, that's not substantive evidence. That's probative, and that supports the plaintiff's case. So I think we can stop right there and say judgment should be entered for the defendants. And it seems that the plaintiff seems to be saying, well, you know, we can draw these inferences based on Donnelly's testimony, and that doesn't comport with the standard governing circumstantial evidence. But there's no inferences, the defendant isn't allowed, and if you accept that, then the defendant certainly is allowed for reasonable inferences to be drawn from their testimony on comparative fault. You can't have it both ways. And another way that I think is a very contradictory presentation that really doesn't ring true is to say, Walker, somehow that he was permitted, he's continuously, he's performing these tasks, the testimony doesn't support that. But we have this notion that the trial court relied on, that Donnelly relied on, that Walker was this, had this expertise, and yet he doesn't know anything. He doesn't know anything about the top of the elevator. That doesn't make any sense at all, your honors. That's just contradictory. If what the plaintiff is saying is true, he did have notice, and he would be held to that standard. But again, I feel like as we talk about these issues, we're getting a feel from the really and truly basic problem of this case, which is that the plaintiff didn't meet her burden of proving proximate cause. And just very briefly, on the concept of the court was asking about willful and wanton negligence, the plaintiff didn't cite any case that supported that theory. And there's no evidence whatsoever of any previous such incident where somebody was injured with the elevators. And there's no evidence that RMC or CHA knew about this oil situation that was described by Mr. Donnelly. And again, by the plaintiff's theory, if there were this problem, the plaintiff would have some responsibility for detecting that as well. So the standard, and it's a high standard for willful and wanton, is to show that the defendants had knowledge of circumstances or recklessly disregarded them, and that the natural and probable consequences of the situation would be an injury. And there's nowhere, the record doesn't even approach supporting that concept, Your Honors. May I answer any more questions? Thank you very much. We ask for reversal or a new trial on behalf of both defendants. All right.  The briefs were well written and the arguments well done. And we will take the matter under advisement. And we'll take a short recess now to switch our panel.